UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

HOWARD K. STERN,             CASE NO. 07-60534-CV-DIMITROLEAS

    Plaintiff

v.

JOHN O'QUINN

    Defendant.
_____/

**OBJECTION OF THE SEMINOLE TRIBE OF FLORIDA TO SUBPOENA
DUCES TECUM FOR DEPOSITION; MOTION TO QUASH SUBPOENA
FOR INSUFFICIENCY OF PROCESS AND FOR LACK OF
PERSONAL AND SUBJECT MATTER JURISDICTION**

Seminole Tribe of Florida, a non-party in the above-referenced cause, objects to the subpoena duces tecum for deposition directed to the Communications Records Supervisor of the Seminole Police Department regarding tribal police records relating to the death of Vicki Lynn Marshall a/k/a Anna Nicole Smith who died while a guest at the Seminole Hard Rock Hotel & Casino – Hollywood in February 2007. The Seminole Tribe also moves to quash the subpoena for insufficiency of process and service of process and for lack of personal and subject matter jurisdiction. No such record custodian exists and the matters sought to be discovered are part of an ongoing criminal investigation. As grounds for this motion, Movant would show to the Court the following:

## I. INSUFFICIENCY OF SERVICE OF PROCESS
## AND LACK OF PERSONAL JURISDICTION

1.      The Seminole Tribe is an organized Indian tribe which is recognized and so designated under Section 16 of the *Indian Reorganization Act of 1934*, as amended, 25 U.S.C. Section 476.  As such, it is a federally recognized sovereign Indian tribe.

2.      (a)     On October 25, 2007, Plaintiff's counsel, Eric Schroeder Esq., issued a subpoena duces tecum for deposition purporting to require a sovereign governmental entity, the Seminole Tribe of Florida, to appear in Palm Beach Gardens on November 19, 2007 [1] for the taking of a deposition and to produce at that time copies of certain sovereign governmental documentation and information belonging to the Seminole Tribe of Florida pertaining to the ongoing criminal investigation of Ms. Smith.  The subpoena was not directed to an individual, department, tribal corporation or governmental entity of the Seminole Tribe, but was directed as follows:

>       TO:     Communications Records Supervisor
>               Seminole Police Department
>               3280 N 64th Ave.
>               Hollywood, FL 33024

A copy of the genuine subpoena duces tecum for deposition is attached hereto as **Exhibit "A".**

(b)  The subpoena does not identify upon whom the subpoena was served.

The Seminole Tribe is not a corporation but a federally recognized Indian tribe. There is no communications records custodian of the Seminole Tribe of Florida Police Department.  At no time was the subpoena appropriately served upon the Seminole Tribe with respect to the Tribe or any of its governmental officials or agents.

3.      The tribal affairs of the Seminole Tribe are managed by an elected Tribal Council of five members, one of whom is designated as Chairman of the Tribal Council.  Neither the Chairman

nor any member of the Tribal Council (or any authorized agent of the Tribal Council) has been served with process in this case. At no time has any member of the Tribal Council of the Seminole Tribe of Florida delegated authority to any individual tribal official or employee to accept or receive service of process on behalf of the Seminole Tribe of Florida or any tribal employee in connection with this or any other case.

4. The Seminole Tribe will be proffering the testimony of Max Osceola, Jr., a Tribal Council Member of the Seminole Tribe which will establish, under oath, that no member of the Tribal Council has been served with the subpoena nor has the Tribal Council approved, or been requested to consider approving, any waiver of immunity with regard to the Seminole Tribe or any of its subordinate governmental units or authorized agents or employees with regard to the referenced matter.

5. By way of example only, to provide for service on public agencies and their officials, the Florida Legislature enacted Public Law 67-254 which is embodied in Section 48.111, Florida Statutes and which reads, in pertinent part, as follows:

SERVICE ON PUBLIC AGENCIES AND OFFICERS

(1)   Process against any municipal corporation, agency, Board or commission, Department or Subdivision of the State or any County which has a governing Board, Council, or Commission, or which is a body corporate shall be served:

(a)   On the President, Mayor, Chairman or other head thereof; and in his absence;

(b)   On the Vice-President, Vice-Mayor or Vice-Chairman, or in the absence of all of the above;

(c)   On any member of the governing Board, Council or commission.

---

1 By agreement, the return date was extended to December 31, 2007.

6. Alternate provisions of the law provide for service upon an agent appointed by the public agency to accept service of process for the agency and upon the Secretary of State.[2] The Seminole Tribe does <u>not</u> have a registered agent in the State of Florida or in any other state, nor has it consented to be bound by the above law relating to service of process. Accordingly, personal jurisdiction over the Seminole Tribe and its tribal officials can <u>only</u> be obtained, if at all, by <u>personal delivery</u> of the subpoena upon a Tribal Council member, and then, only with the Tribe's express consent, which has not been given.

(b) Section 48.111, Florida Statutes sets forth a specific procedural hierarchy which must be followed if service of process is to be properly effected upon any sovereign body which has consented to be bound by the statute and, like the Seminole Tribe, has a governing council. Where the Chairman is absent and cannot be served, the statute provides that the Vice-Chairman may be served in the place of the Chairman. In the absence of the Chairman or the Vice-Chairman, process may then be served upon any member of the governing Council.

(c) In this case, the service of the subpoena clearly does not conform to the requirements of Section 48.111(l), Florida Statutes which requires service upon the Chairman, Vice Chairman or other members of the Tribal Council in their official capacities. Moreover, at no time has the Tribe agreed to be bound by such statute.

7. Under Section 48.111(l), Florida Statutes, the statutory scheme provides for certain individuals to be served in order to bind a governmental agency such as the Seminole Tribe. The courts have consistently followed the rule of strict construction in cases involving service of process

---

[2] While acceptance of service of process may be made on one's behalf by an agent, it must be made to appear that such agent was authorized to accept service to bind his principal. <u>See</u>, 62 Am. Jur. 2d <u>Process</u> Section 29.

on governmental agencies. *See, e.g.*, Broward County Health Department v. Martin, 307 So.2d 220 (Fla. 4th DCA 1975); Mendoza v. City of Miami, 483 F.2d 430 (5th Cir. 1973). In addition, Florida courts have likewise consistently followed the rule of strict construction in cases involving service of process on corporations. Ludlum Enterprises, Inc. v. Outdoor Media Company, Inc., 250 So.2d 649 (Fla. 4th DCA 1971).

8. Section 48.081, Florida Statutes, also establishes criteria for service of process on corporations. The purpose of this section is to insure notice as high on corporate hierarchy as possible. Ludlum Enterprises, Inc. v. Outdoor Media, Inc., 250 So.2d 649 (Fla. 4th DCA 1971). In Ludlum, it was held that service of process on a desk clerk at defendant's hotel was invalid notwithstanding the fact that the desk clerk subsequently delivered the material to the president of the defendant corporation. In Ludlum, the Court found that there had been no showing of the absence of any of the persons enumerated in the statute upon whom process could be served. Id. at 649-650. In Murphy & Jordan, Inc. v. Insurance Company of North America, 278 So.2d. 296 (Fla. 3d DCA 1973), the court held that under Section 48.081, Florida Statutes, service of process upon the secretary of a corporation was not proper where the president of the corporation was available for service. Id. at 297.

9. In this case before this Court, it is clear that Plaintiff is seeking to serve the Seminole Tribe with process in this matter. Plaintiff did not comply with established procedures in attempting to require a representative of the Seminole Tribe to appear and provide testimony and to produce sovereign governmental documentation belonging to the Seminole Tribe. Instead, Plaintiff's counsel chose to serve its defective subpoena duces tecum for deposition on a person not authorized by law to accept service on behalf of the Seminole Tribe by simply leaving the subpoena duces tecum with that unidentified employee. As a result of the insufficiency of the subpoena and the service thereof,

this Court lacks personal jurisdiction over the Seminole Tribe and its subordinate governmental units, and its employees and agents.

## II.  LACK OF SUBJECT MATTER JURISDICTION BASED UPON THE DOCTRINE OF TRIBAL SOVEREIGN IMMUNITY

10. The subpoena duces tecum for deposition seeks to involve the Seminole Tribe in litigation in which it has no direct interest.  In New Mexico v. Mescalero Apache Tribe, 462 U.S. 324 (1983), the United States Supreme Court made it clear that a state may not act in a manner that infringes on the right of reservation Indians to make their own laws and be ruled by them.[3]

11. Where governmental bodies such as the Seminole Tribe are immune from process under the doctrine of sovereign immunity, such matter is appropriately raised by challenging the subject matter jurisdiction of the Court.

12. As a federally recognized sovereign Indian Tribe, the Seminole Tribe and its subordinate governmental and tribal officials are entitled to sovereign immunity.  Chief Justice Marshall clearly stated in Worchester v. Georgia, 31 U.S. (6 Pet.) 515, 557 (1832), that Indian Nations are:

> ...distinct political communities, having territorial boundaries within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States.

Further, in Atkinson v. Haldane, 569 P.2d 151 (Alaska 1977), the Court reiterated the immunity of Indian nations from suits in state courts in recognition of the supremacy of the decisions of the United States Supreme Court:

---

[3] The Court also made it clear that "A tribe's power to exclude non-members entirely or to condition their presence on the reservation is equally well established." Id. at 385.

> Because of the supremacy of Federal law, we <u>are bound to recognize the doctrine of tribal sovereign immunity, even if we were to find valid public policy reasons to hold it inapplicable in this case</u>.

<u>Id</u>. at page 163. (Emphasis added)

13.     Section 16 of the <u>Indian Reorganization Act of 1934</u>, as amended, 25 U.S.C. § 476, clearly establishes the right of an Indian tribe to organize for its common welfare by adopting a constitution and by-laws in accordance with the provisions of the Act. By adoption of its constitution, the Seminole Tribe became a fully recognized Indian tribe under the laws of the United States. As such, this recognition vested in the Tribal government certain powers in addition to its pre-existing sovereign powers. One of the long standing powers that the Seminole Tribe has always had and retained is its right as a sovereign government to tribal sovereign immunity for itself and its officials.

14.     The federally recognized tribal sovereignty of Indian tribes lies at the heart of the special and unique relationship that exists between the United States and Indian tribes: that of a conquering sovereign to a conquered sovereign. This relationship has been defined as most akin to that of a guardian to its ward, as stated by Chief Justice John Marshall in <u>Cherokee Nation v. Georgia</u>, 30 U.S. (5 Pet.) 1, 17 (1831):

> Meanwhile, they are in a state of pupilage; their relationship to the United States resembles that of a ward to his guardian.

15.     Fifty years later, the United States Supreme Court redefined the relationship between the United States and Indian tribes in the same vein when it stated:

> These Indian tribes *are* the wards of the nation. They are communities *dependent* on the United States,--dependent largely for their daily food; dependent for their political rights. <u>They owe no allegiance to the states, and receive from them no protection</u>. Because of the local ill feeling, the people of the states where they are found are often their deadliest enemies. From their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the executive, and by congress, and by this court, whenever the question has arisen.

<u>United States v. Kagama, alias Pactah Billy, an Indian</u>, 118 U.S. 375, 384-385 (1886); see also, <u>United States v. Sandoval</u>, 231 U.S. 28 (1913).

16. It is firmly established that Indian tribes are regarded by the United States as dependent political sovereign governments which possess all aspects and attributes of sovereignty except where they have been taken away by Congressional action. As an aspect of their sovereignty, Indian tribes such as the Seminole Tribe are immune from suit or process in state and federal courts. *See, e.g.* <u>Santa Clara Pueblo v. Martinez</u> 436 U.S. 49 (1978); <u>Puyallup Tribe, Inc. v. Department of Gaming of the State of Washington</u> 433 U.S. 165 (1977); <u>Merrion v. Jicarilla Apache Tribe</u> 617 F.2d 537 (10th Cir. 1982) *aff'd* 455 U.S. 130 (1982); <u>Houghtaling v. Seminole Tribe of Florida</u> 611 So.2d 1235 (Fla. 1993). It is equally clear that a subpoena or other process, such as garnishment or attachment, cannot be effected against a Tribe or its subordinate governmental units and agents. See, <u>Maryland Casualty Company v. Citizens National Bank of West Hollywood</u> 361 F.2d 517 (5th Cir. 1966) *cert. den.* 385 U.S. 918. A subpoena is considered an instrument of the Court's process. See, <u>Matter of Certain Complaints Under Investigation</u> 783 F.2d 1488 (11th Cir. 1986).

17. Indian tribes have always been considered to have an immunity from court jurisdiction similar to that enjoyed by the federal government. <u>Namekagon Development Company</u>

v. Bois Forte Reservation Housing Authority, 517 F.2d 508 (8th Cir. 1975). Moreover, since an Indian tribe's sovereign immunity is co-extensive with that of the United States, a party cannot maintain a claim or otherwise serve process against an Indian tribe or any of its tribal officials absent a firm showing of an effective waiver which is unequivocally expressed. A waiver of tribal sovereign immunity may never arise by implication. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978).

18. In American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374 (8th Cir. 1985), the Court was clear and emphatic in expressing an Indian tribe's unquestionable right to sovereign immunity absent an express waiver:

> Indian tribes long have structured their many commercial dealings upon the justified expectation that absent an express waiver, their sovereign immunity stood fast. Relaxation of the settled standard invites challenge to virtually every activity undertaken by a tribe on the basis that tribal immunity had been implicitly waived. Moreover, a waiver of immunity by tribal action represents a substantial surrender of sovereign power and, therefore, merits no less scrutiny than a waiver based on congressional action. As the Fifth Circuit stated, [T]o construe the immunity to suit as not applying to suits on liability as arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity, namely, the protection of the interests and the property of tribes...(citing Maryland Casualty Co. v. Citizens National Bank, 361 F.2d 517, 521-22 (5th Cir.), cert. denied, 385 U.S. 918 (1966).

Id. at 1378.

19. Sovereign immunity is a right of the sovereign. The doctrine goes to the power of the court and not to the subject matter of the dispute. As the Ninth Circuit said in State of California v. Quechan Tribe of Indians, 595 F.2d 1153 (9th Cir. 1979), "Sovereign immunity involves a right which courts have no choice, in the absence of a waiver, but to recognize. It is not a remedy..." Id. at 1155.

20.     What the subpoena duces tecum for deposition seeks in this case is jurisdiction to enforce process against the Seminole Tribe which can only be provided through an express or unequivocal congressional waiver or an express and unequivocal tribal waiver through the governmental action of its duly elected governing body -- the Tribal Council.  Both are conspicuously absent in this case. Moreover, compliance with this subpoena would interfere with an ongoing criminal investigation involving the Seminole Police Department.

21.     The subpoena duces tecum for deposition in this matter is directed to a sovereign tribal government and a non-existent records custodian and not an individual tribal employee with authority to accept service.  Nevertheless, even if the subpoena were directed to a particular individual, it should be noted that the sovereign immunity enjoyed by Indian tribes extends to their officials and employees.  See, United States v. State of Oregon 657 F.2d 1009 (9th Cir. 1981); State of Oklahoma ex rel. Oklahoma Tax Commission v. Graham 882 F.2d 951, 956-957 (10th Cir. 1987) *vacated on other grounds* 484 U.S. 973; Tenneco Oil Company v. Sac and Fox Tribe of Indians of Oklahoma 725 F.2d 572 (10th Cir. 1987); United Nuclear Corporation v. Clark 584 F. Supp. 107, 109 (D.D.C. 1984); Bruette v. Knope 554 F. Supp. 301 (E.D. Wisc. 1983); White Mountain Apache Tribe v. Industrial Commission of Arizona 796 P. 2d 223 (Ariz. App. 1985).

22.     Indian tribes are culturally, politically and economically separate from the rest of society and enjoy certain federal protections so that they may remain largely self-governing. Section 16 of the Indian Reorganization Act of 1934, as amended, 25 U.S.C. § 476, establishes the right of an Indian tribe to organize for its common welfare and makes clear that the focus of federal Indian law is on the political and constitutionally recognized entity--**the tribe**--rather than on individual Indians.  The doctrine of tribal sovereign immunity is essential to guard against the unwarranted

exercise of state and federal jurisdiction over tribal affairs which would impinge on tribal self-government and economic development.

## CONCLUSION

Based on the foregoing, the Seminole Tribe respectfully requests that this Court enter an order quashing the subpoena duces tecum for deposition and the alleged service thereof and sustaining the objection of the Seminole Tribe as to the subpoena duces tecum for deposition directed to the Seminole Tribe of Florida for insufficiency of process, insufficiency of service and for lack of personal and subject matter jurisdiction.

We hereby certify that in a telephone conversation with attorney for Plaintiff, it was Plaintiff's expectation to receive some or all documents covered in the attached subpoena based upon the matter set forth herein there is no basis on which to obtain a suitable agreement at this time.

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via telecopier and first class mail, postage pre-paid this _____ day of December 2007 to Eric P. Schroeder, Esq., attorney for the plaintiff, Powell & Goldstein, LLC, 1201 W. Peachtree Street, NW, Atlanta, GA.  30309 and to Tanesha Walls Blye, Stephens, Lynn, Klein, Lacava, Hoffman & Puya, Two Datran Center-PH-2, 9130 South Dadeland Blvd., Miami, FL  33156.

        KAMEN & ORLOVSKY, P.A.
        Attorneys for Seminole Tribe
        1601 Belvedere Road, Suite 402 South
        West Palm Beach, Florida  33406
        (561) 687-8500
        (561) 687-7892 (Fax)

By: /s Donald A. Orlovsky
      Donald A. Orlovsky
      Florida Bar No. 223816

2240/dao33048.obj

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

HOWARD K. STERN,   CASE NO. 07-60534-CV-DIMITROLEAS

    Plaintiff

v.

JOHN O'QUINN

    Defendant.
_____/

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 28, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    s/ Donald A. Orlovsky_____
    Donald A. Orlovsky, Esq.- Florida Bar No: 223816
    dao4law@aol.com
    KAMEN & ORLOVSKY, P.A.
    1601 Belvedere Road, Ste. 402-S
    West Palm Beach, FL 33406
    Telephone: (561) 687-8500
    Fascimile:  (561) 687-7892
    Attorneys for Seminole Tribe of Florida

**SERVICE LIST**

**HOWARD K. STERN vs. JOHN O'QUINN**
**Case No. 07-60534-CV-DIMITROLEAS**
**United States District Court, Southern District of Florida**

Eric P. Schroeder, Esq..
Email: eschroed@pogo.com
Powell & Goldstein, LLC
1201 W Peachtree Street, NW
Atlanta, GA  30309
Telephone: (404)572-6894
Facsimile:  (404)572-6999
Attorneys for Plaintiff: Howard K. Stern
Method of Service:  Electronic Notice

Tanesha Walls Byle
Email:  wallst@stephenslynn.com
Stephens, Lynn, Klein, LaCava, Hoffman & Puya
Two Datran Center – PH – 2
9130 South Dadeland Blvd.
Miami, FL  33156
Attorneys for John O'Quinn
Method of Service:     Electronic Notice

Donald A. Orlovsky, Esq.
Email: dao4law@aol.com
doreeceharp@kamenorlovsky.com
KAMEN & ORLOVSKY, P.A.
1601 Belvedere Road
Suite 402-South
West Palm Beach, FL  33406
Telephone:  (561) 687-8500
Facsimile:    (561) 687-7892
Attorneys for Seminole Tribe of Florida
Method of Service:  Electronic Notice